IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RWS AND ASSOCIATES ENTERTAINMENT, INC., <br><br> Plaintiff, <br> v. <br><br> IRON, WOOD & GLITTER, LLC, d/b/a IWG PRODUCTIONS, RYAN PALMER, and JEREMY WOOD, <br><br> Defendants. | Civil Action No. <br><br><br> **COMPLAINT AND JURY DEMAND** |

## INTRODUCTION

1. Plaintiff RWS and Associates Entertainment, Inc. ("RWS" or "Plaintiff"), asserts claims against defendants Iron, Wood & Glitter, LLC, d/b/a IWG Productions ("IWG"), Ryan Palmer ("Palmer"), and Jeremy Wood ("Wood") (collectively, "Defendants"), based on Palmer's and Wood's violations of their post-employment obligations to RWS, and other tortious conduct engaged in by all Defendants.

2. Palmer and Wood are two former high-level employees of RWS, a global entertainment company formed in 2003 and headquartered in New York.

3. As a condition of their high-level employment with RWS, and their access to RWS's customers and confidential business information, Palmer and Wood each entered into employment agreements with RWS ("Employment Contracts"), in which they agreed, among other things, not to solicit, and not to do business with if solicited by, any of RWS's current, former, or prospective RWS customers for two years following the effective dates of their resignations (each, a "Restricted Period"; collectively, "Restricted Periods").

4. In violation of these duties, since their resignations, Palmer and Wood have, during the Restricted Periods of their Employment Contracts, solicited and done business with at least one RWS client with whom they actively worked while employed by RWS. They have done so through their newly formed company, IWG.

5. Were it not for their employment with RWS and the access they gained to RWS's clients and confidential business information in the course of that employment, Palmer and Wood would not have been able to solicit and secure business from RWS's clients on behalf of IWG.

6. Accordingly, RWS brings claims against Palmer and Wood for breaching their Employment Contracts with RWS, and breaching their common law duties of loyalty to RWS; claims against all Defendants for common law misappropriation of confidential business information and unfair competition; a claim against IWG for tortiously interfering with Palmer's and Wood's contractual obligations to RWS; and a claim against all Defendants for tortiously interfering with RWS's relationships with its customers.

## THE PARTIES

7. Plaintiff RWS is a Delaware corporation with its principal place of business located at 34-01 38th Avenue, Suite 302, Long Island City, NY 11101.

8. Defendant Palmer is natural person and citizen of the Commonwealth of Virginia with his primary residence located in Williamsburg, Virginia.

9. Defendant Wood is natural person and a citizen of the Commonwealth of Kentucky, with his primary residence located in Kentucky.

10. Defendant IWG is a Kentucky Limited Liability Company with its principal address located at 119 Patrick Henry Drive, Williamsburg, VA 23185-2721. Upon information and belief, IWG's sole members are Palmer and Wood.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this matter based on diversity of citizenship under 28 U.S.C. § 1332(a)(2).  Specifically, Plaintiff RWS is a Delaware corporation whose principal place of business is in New York State and, therefore, is deemed a citizen of both Delaware and New York for diversity purposes.  Moreover, Defendants are deemed citizens of Virginia and Kentucky for diversity purposes, in that:  Palmer is domiciled in Virginia and, thus, is a citizen of Virginia; Wood is domiciled in Kentucky and, thus, is a citizen of Kentucky; and IWG is a limited liability company whose sole members are Palmer and Wood and, thus, is a citizen of both Virginia and Kentucky.  Moreover, the amount in controversy (including the value of the equitable relief sought herein, as well as punitive damages) well exceeds $75,000, exclusive of attorneys' fees, costs, and interest.

12. This Court has personal jurisdiction over Defendants because this dispute relates to the Employment Contracts that Palmer and Wood signed with RWS, in which they expressly consented to the personal jurisdiction of a court of competent jurisdiction within New York, New York for purposes of resolving disputes concerning these Employment Contracts.

13. Moreover, venue is proper in this District because Palmer and Wood expressly agreed, in their Employment Contracts with RWS, that any action for breach of their Employment Contracts "shall be commenced in a court of competent jurisdiction within New York, New York."

## FACTS

**A.    The Relationship between the Parties**

14. RWS is a full-service worldwide entertainment company founded in 2003. RWS provides live entertainment for customers and clients in a wide range of industries, including hospitality, leisure, cruise, attractions, municipality, theatrical, and corporate industries.

15. RWS creates custom entertainment, live events, and branded experiences. It operates a 56,000 square foot production facility in New York City, and it currently delivers over 400 live productions per year.

16. Palmer joined RWS on January 18, 2018, as Technical Director. In that role, Palmer was responsible for overseeing, educating, and guiding project teams in supporting all technical aspects of the production process for live events created by RWS. His responsibilities included, among other things, ensuring that all technical aspects of the production work smoothly, efficiently, and safely; facilitating and assisting in the bid process for all technical equipment and services; providing overall onsite supervision and leadership; and developing and maintaining effective relationships with clients, vendors, staff, and other business partners.

17. Wood joined RWS on April 16, 2018, as Associate Technical Director. In that role, Wood reported to Palmer and served as the conduit for information flow between project leadership and the team of installation technicians. His responsibilities included, among other things, managing the job site for the project; overseeing the production processes; overseeing and training teams of technicians onsite; and establishing and maintaining effective working relationships with clients, vendors, staff, and other business partners.

**B.    Palmer's and Wood's Employment Contracts with RWS**

18. By virtue of their job duties, both Palmer and Wood were entrusted with confidential and proprietary information about RWS's business operations. This information includes, among other things, information about RWS's creative methods and approach related to its entertainment services; RWS's business strategies; RWS's costs and profits; and RWS's customers and vendors.

19. In addition, by virtue of their employment with RWS, Palmer and Wood were introduced to many of RWS's clients and business partners and entrusted with developing and maintaining relationships with these clients and business partners.

20. To protect RWS's business interests -- including its confidential and proprietary business information and its relationships with its customers and business partners -- Palmer's and Wood's Employment Contracts with RWS's included, among other things, confidentiality and non-solicitation clauses.

21. The confidentiality clauses of Palmer's and Wood's Employment Contracts each state as follows:

> Employee acknowledges that Employee's employment with the Company will familiarize Employee with trade secrets, and confidential/proprietary information of the Company (individually and collectively, "Confidential Information"). Examples of the Company's Confidential Information include without limitation information regarding the Company's creative methods and approach related to its entertainment services, costs, profits, markets, sales, products, key personnel, operational methods, business strategies, certain information concerning clients, and other information which the Company engages in efforts to protect from disclosure or discovery by its competitors and other third parties. Confidential Information shall also include all information provided by the Company to Employee prior to the signing of this Letter Agreement. Employee further acknowledges that the Company may, in reliance on this Letter Agreement, provide Employee access to Confidential Information and clients and good will (hereinafter collectively referred to as Protectable Business Interests "PBI") and that the unintentional or intentional disclosure of the Employer's PBI would have a material adverse effect on the Company's business. <u>Accordingly, Employee agrees not to, directly or indirectly, during or anytime after employment, disclose, make known, divulge, publish or communicate PBI to any person, firm or entity, and not to use any portion of PBI for Employee's own benefit or for any purpose except in connection with Employee's employment under this Letter Agreement.</u>

(emphasis added).

22. Moreover, the non-solicitation clauses of Palmer's and Wood's Employment Contracts each state as follows:

> <u>Employee covenants herein not to solicit, and not to do business with if solicited by, any of the Company's current, former or prospective customers</u>, or the Company's employees or contractors, on behalf of themselves or on behalf of any other person, firm, company or corporation <u>during Employee's employment with the Company and for a period of two (2) years thereafter</u>, regardless of the reason for Employee's separation from employment. A prospective customer is defined as any person or entity the Company has actively solicited during the twelve (12) months before Employee's separation from employment with the Company. This solicitation provision prohibits Employee's ability to solicit from, or otherwise sell to, employees or seasonal employees of RWS.

(emphasis added).

23. The non-solicitation clauses are reasonable and narrowly tailored to protect RWS's business interests in its confidential information and its relationships with its customers and other business partners. Notably, in each of their Employment Contracts with RWS, Palmer and Wood expressly acknowledged the reasonableness and necessity for the restrictions contained therein:

> Employee recognizes and agrees that the Company has (i) spent considerable time and effort in developing the goodwill of its business and with customers and former customers across the United States and (ii) protectable interests in trade secrets and other confidential material and the unique and extraordinary services Employee provides to the Company. Employee further agrees that performing services in an industry that is competitive with the Company has the potential to disclose the Company's PBI and therefore the above restrictions are necessary, reasonable in time and scope, and enforceable. Employee further consents to the entering of a preliminary and permanent injunction, in addition to any other relief, including but not limited to monetary damages and attorneys' fees, in the event employee breaches any of the restrictions herein.

24. Moreover, in each of their Employment Contracts with RWS, Palmer and Wood committed that, during the respective two-year Restricted Periods of ther Employment Contracts, they would advise RWS in writing "within two weeks of accepting an opportunity to perform services for any third party (or in adance of starting his or her own business) so that the Company can confirm that Employee's conduct is not in violation of the restrictions herein."

25. Palmer's and Wood's Employment Contracts with RWS also made clear that, in the event of a breach of any covenant containing a specified time period (including the non-

-6-

solicitation clause), "the time period shall be extended by the period of time between Employee's termination of employment with the Company and the date a court of competent jurisdiction enters an injunction restraining further breach of the coveanant."

**C.      Palmer and Wood Resign from RWS and Violate their Duties to RWS**

26.     Palmer voluntarily resigned from RWS on May 14, 2019.  Therefore, the two-year Restricted Period in his Employment Contract continued through May 14, 2021.

27.     Meanwhile, Wood voluntarily resigned from RWS on March 16, 2020.  Therefore, the two-year Restricted Period in his Employment Contract remains in place through March 16, 2022.

28.     On or around February 9, 2021 -- during the Restricted Periods for both Palmer and Wood -- Palmer and Wood formed IWG.  IWG, like RWS, is an entertainment company that specializes in live entertainment events.

29.     Notably, at no time prior to forming IWG did Palmer or Wood notify RWS in writing of their plans to do so, even though their Employment Contracts with RWS required them to do so two weeks in advance "so that the [RWS] can confirm that [Palmer's and Wood's] conduct is not in violation of the restrictions herein."

30.     Moreover, on or before March 19, 2021 -- well within the Restricted Periods of both Palmer's and Wood's Employment Contracts with RWS -- Palmer and Wood responded to a request for proposal from Sesame Place Philadelphia ("Sesame Place"), on behalf of their newly-formed company, IWG.

31.     Sesame Place is a current RWS customer, and it was an RWS customer during Palmer's and Wood's employment with RWS.

32.     Additionally, Sesame Place was a customer of RWS with whom both Palmer and

Wood regularly interacted and developed a strong relationship in the course of their employment with RWS.

33. Moreover, upon information and belief, IWG was able to use Palmer's and Wood's access to RWS's confidential and proprietary information, including non-public information about RWS's pricing, to gain an unfair competitive advantage in bidding on the Sesame Place work.

34. Sesame Place awarded IWG this work on or around April 21, 2021.

35. Palmer's and Wood's bidding on the Sesame Place work during the Restricted Periods of both of their Employment Contracts with RWS clearly violated the non-solicitation clause of these Employment Contracts.

36. Moreover, were it not for the fact that IWG bid on the work, it would have instead been awarded to RWS given RWS's established relationship with Sesame Place.

37. Thus, Defendants' conduct, in derogation of their contractual and common law duties to RWS, has caused, and will continue to cause, RWS to suffer substantial damages.

## COUNT ONE

## BREACH OF CONTRACT

## (AGAINST DEFENDANTS PALMER AND WOOD)

38. RWS repeats and realleges each and every allegation contained in the preceding paragraphs above as if fully set forth at length herein.

39. As set forth more fully above, Palmer and Wood each executed Employment Contracts as a condition of their employment with RWS which, among other things: required Palmer and Wood to disclose in writing to RWS two weeks in advance of starting their own business during the Restricted Periods, to enable RWS to evaluate whether they were complying with their obligations under their Employment Contracts; prohibited Palmer and Wood from

soliciting RWS's customers and prospective customers during the Restricted Periods; and prohibited Palmer and Wood from disclosing or using RWS's confidential information for any purpose except in connection with their employment with RWS.

40. Palmer and Wood violated their obligations under their Employment Contracts with RWS in multiple ways, described more fully above.  Among other things, Palmer and Wood failed to inform RWS in writing two weeks in advance of their plans to form IWG, which deprived RWS of the opportunity to evaluate whether their new business was compliant with their obligations under their Employment Contracts.  Then, Palmer and Wood solicited business from and did business with Sesame Place during the Restricted Periods of their Employment Contracts, in direct violation of their non-solicitation obligations under these Employment Contracts.  Making matters even worse, upon information and belief, Palmer and Wood misused RWS's confidential business information to aid them in unfairly soliciting and winning business from Sesame Place.

41. As a result of the foregoing, RWS has been injured, for which it is entitled to compensatory damages in such amounts as may be proven at trial; equitable relief in the form of an extension of the Restricted Periods of Palmer's and Wood's Employment Contracts to account for the periods in which they were in violation; permanent injunctive relief; punitive damages in such amounts as the proofs at trial may warrant; together with interest, attorneys' fees, and costs.

## COUNT TWO

## BREACH OF THE COMMON LAW DUTY OF LOYALTY

### (AGAINST DEFENDANTS PALMER AND WOOD)

42. RWS repeats and realleges each and every allegation contained in the preceding paragraphs above as if fully set forth at length herein.

43. By virtue of their employment with RWS, and their access to RWS's confidential and proprietary information about RWS's business and its customers, Palmer and Wood owed, and continue to owe, a common law duty of loyalty to RWS.

44. As detailed more fully above, Palmer and Wood misused the confidential and proprietary information that RWS entrusted to them by virtue of their employment with RWS, for the benefit of themselves and their new business venture, IWG.

45. In doing so, Palmer and Wood violated the common law duty of loyalty they owed and continue to owe to RWS.

46. As a result of the foregoing, RWS has been injured, for which it is entitled to compensatory damages in such amounts as may be proven at trial; equitable relief in the form of a permanent injunction against Palmer and Wood; punitive damages in such amounts as the proofs at trial may warrant; together with interest, attorneys' fees, and costs.

## COUNT THREE

## MISAPPROPRIATION OF CONFIDENTIAL BUSINESS INFORMATION

### (AGAINST ALL DEFENDANTS)

47. RWS repeats and realleges each and every allegation contained in the preceding paragraphs above as if fully set forth at length herein.

48. As detailed more fully above, Defendants have wrongfully misappropriated, retained, used, and/or disclosed RWS's confidential and proprietary information about RWS's business and its customers, in violation of their common law duties to RWS.

49. As a result of the foregoing, RWS has been injured, for which it is entitled to compensatory damages in such amounts as may be proven at trial; equitable relief in the form of a

permanent injunction against Palmer and Wood; punitive damages in such amounts as the proofs at trial may warrant; together with interest, attorneys' fees, and costs.

## COUNT FOUR

## UNFAIR COMPETITION

### (AGAINST ALL DEFENDANTS)

50. RWS repeats and realleges each and every allegation contained in the preceding paragraphs above as if fully set forth at length herein.

51. As detailed more fully above, Palmer and Wood misused the confidential and proprietary information that RWS entrusted to them by virtue of their employment with RWS, including non-public information about RWS's pricing.

52. In doing so, all Defendants gained an unfair competitive advantage in bidding on the Sesame Place work, to their benefit and to the detriment of RWS, for which Defendants are liable to RWS on the common law cause of action for unfair competition.

53. As a result of the foregoing, RWS has been injured, for which it is entitled to compensatory damages in such amounts as may be proven at trial; equitable relief in the form of a permanent injunction against Palmer and Wood; punitive damages in such amounts as the proofs at trial may warrant; together with interest, attorneys' fees, and costs.

## COUNT FIVE

## TORTIOUS INTERFERENCE WITH CONTRACT

### (AGAINST IWG)

54. RWS repeats and realleges each and every allegation contained in the preceding paragraphs above as if fully set forth at length herein.

55. As set forth more fully above, Palmer and Wood each executed Employment Contracts as a condition of their employment with RWS which, among other things: required Palmer and Wood to disclose in writing to RWS two weeks in advance of starting their own business during the Restricted Periods, to enable RWS to evaluate whether they were complying with their obligations under their Employment Contracts; prohibited Palmer and Wood from soliciting RWS's customers and prospective customers during the Restricted Periods; and prohibited Palmer and Wood from disclosing or using RWS's confidential information for any purpose except in connection with their employment with RWS.

56. IWG was aware of Palmer's and Wood's contractual obligations to RWS. Nonetheless, IWG knowingly interfered with these contractual obligations by inducing Palmer and Wood to solicit from and do business with Sesame Place during the Restricted Periods, and misuse RWS's confidential business information, in direct violation of Palmer's and Wood's obligations under their Employment Contracts with RWS.

57. As a result of the foregoing, RWS has been injured, for which it is entitled to compensatory damages in such amounts as may be proven at trial; equitable relief in the form of a permanent injunction against Palmer and Wood; punitive damages in such amounts as the proofs at trial may warrant; together with interest, attorneys' fees, and costs.

## COUNT SIX

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### (AGAINST ALL DEFENDANTS)

58. RWS repeats and realleges each and every allegation contained in the preceding paragraphs above as if fully set forth at length herein.

59. RWS had and has a reasonable expectancy of a continuing business relationship with its customers, including but not limited to Sesame Place.

60. As detailed more fully above, Defendants tortiously interfered with RWS's reasonable expectancies by, among other things, misusing the confidential and proprietary information that RWS entrusted to them by virtue of their employment with RWS, and otherwise interfering with RWS's relationships with its customers.

61. But for the foregoing conduct of Defendants, RWS would have continued to receive the benefits of a continued business relationship with its customers.

62. Defendants' tortious and disloyal conduct has interfered with RWS's expectancy of a continued business relationship with Sesame Place and other of its clients, customers, business partners, employees, and consultants.

63. The foregoing conduct of Defendants constitutes, and will continue to constitute, tortious interference with RWS's present and/or prospective contractual relations and economic advantage.

64. As a result of the foregoing, RWS has been injured, for which it is entitled to compensatory damages in such amounts as may be proven at trial; equitable relief in the form of a permanent injunction against Palmer and Wood; punitive damages in such amounts as the proofs at trial may warrant; together with interest, attorneys' fees, and costs.

**WHEREFORE**, RWS respectfully requests that judgment be made and entered in its favor, as follows:

    a. Compensatory damages and losses to be proved at trial;

  b. Equitable relief in the form of an extension of the Restricted Periods of Palmer's and Wood's Employment Contracts to account for the periods in which they were in violation;

  c. Permanent injunctive relief, prohibiting Defendants, and all those acting in concert or participation with them, from: continuing to violate their contractual obligations to RWS; continuing to misappropriate and/or misuse RWS's confidential and proprietary business information for the benefit of persons or entities other than RWS;

  d. Punitive damages for Defendants' intentional and tortious conduct; and

  e. Costs of suit, including attorneys' fees and the costs of investigation and litigation;

  f. Any other relief deemed proper, together with costs and expenses.

## DEMAND FOR TRIAL BY JURY

Plaintiff RWS hereby demands a trial by jury as to each and every one of their foregoing claims and issues so triable.

Dated: Newark, NJ
December 21, 2021

    Respectfully submitted,

    **K&L GATES LLP**

    599 Lexington Avenue
    New York, New York 10022

    and

    One Newark Center, Tenth Floor
    Newark, New Jersey 07102

    By: /s/ George P. Barbatsuly
      George P. Barbatsuly

    Attorneys for Plaintiff
    RWS and Associates Entertainment, Inc.